Ryan R. West, (Utah Bar No. 10398)
Tyson B. Snow, (Utah Bar No. 10747)
**CORVUS LAW GROUP, LLC**
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101
Telephone: (888) 315-4735
Facsimile: (888) 316-0929
rrw@corvuslaw.com
tbs@corvuslaw.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT,
DISTRICT OF UTAH

| | |
|---|---|
| MATTEW S SNYDER,<br>*Plaintiff*,<br>v.<br><br>BANK OF AMERICA N.A., BAC HOME LOANS SERVICING L.P., WASHINGTON MUTUAL BANK F.A., CHASE HOME FINANCE, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, WELLS FARGO BANK N.A., RECONTRUST COMPANY N.A., JOHN DOES I AND II, and JOHN DOES 3 through 10, inclusive.<br>*Defendants*. | **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**<br><br>Civil No. 2:11-CV-00377-DB<br><br>Judge Dee Benson |

Pursuant to Rule 7 of the Federal Rules of Civil Procedure and DUCivR 7-1, Plaintiff Matthew S. Snyder ("Plaintiff" or "Snyder"), respectfully submits this Memorandum in Opposition to the Motion to Dismiss filed by Bank of America, N.A. ("BofA"), BAC Home Loans Servicing LP ("BAC"), Mortgage Electronic Registration Systems, Inc. ("MERS"),

1

ReconTrust Company, N.A. ("ReconTrust"), and Wells Fargo Bank , N.A. ("Wells").

## INTRODUCTION

In his Complaint, Snyder alleges that the "substitute" trustee (ReconTrust), claiming to act on behalf of the purported beneficiary of his Promissory Note ("Note"), does not have the authority to conduct a non-judicial foreclosure on his home ("Subject Property") or, at a minimum, must establish its legal authority to do so.  In their Motion to Dismiss Snyder's Complaint, BofA, BAC, MERS, ReconTrust, and Wells ("Defendants"), attempt to characterize Plaintiff's claims as "… simply trying to escape the consequences of defaulting on his loan agreement." (Defendant's Memorandum ("Def.'s Memo.") at 2).  Instead of addressing Snyder's claims, Defendants argue irrelevant and inapplicable legal theories such as "splitting the note" and "securitization" – neither of which were alleged in Snyder's Complaint.  Defendants' unproven, unsupported factual assumptions that are directly contradicted by newly enacted Utah Law[1], and the well-pleaded allegations in the Complaint cannot serve as the basis for a motion to dismiss.

Snyder has alleged that BofA immediately sold or transferred his Note after it was executed, thus divesting BofA of its interest and/or remedies under the Note or Deed of Trust.  Contrary to Defendants' assertion that Snyder is trying to escpae the consequences of defaulting on his loan, Snyder merely seeks to ensure that the proper parties, pursuant to the proper authority, are conducting the non-judicial foreclosure.  Should the Defendants actually have the right they ask the Court to *assume* they have, rights that can only be established following a

---

[1] Under recently enacted Utah Law, ReconTrust is precluded from conducting foreclosures in the state of Utah.  *See* Utah Code § 57-1-23.5.  Under the statute, ReconTrust is an "unauthorized person," by definition, *see* Utah Code § 57-1-23.5(a), and is thus liable for conducting any foreclosure proceedings within the state, *see* Utah Code § 57-1-23.5(2)(a).

factual inquiry, the Court's declaratory ruling will allow the Defendants to move forward and exercise those rights. There is no basis, however, to deny Synder's right to seek declaratory relief in this regard.

To be clear, Snyder does not challenge the authority of the proper Note Holder or a legally and properly appointed trustee to act on behalf of the Note Holder, including the right to exercise the remedies defined in Trust Deed. Snyder simply seeks, through his claim for declaratory relief, a determination as to the rights of the parties based on sufficient evidence to determine who owns the Note at issue and/or whether they are acting on behalf of the true Note Holder. Snyder *is not* attempting to void the Note or Trust Deed or obtain a ruling invalidating his debt. Despite what Defendants would have the Court believe, Snyder is not attempting to get the Subject Property for free.

When viewed without the characterizations applied by Defendants, the facts come into focus. Prior to this lawsuit, Snyder's request to Defendants for records of assignment, and/or sales of his Note/Trust Deed went unanswered. Snyder has alleged that Defendants initiated the process by which the Note was sold, re-sold, transferred and/or securitized. Accordingly, Snyder has properly alleged that Defendants do not own the Note or the rights secured by the associated Trust Deed.

This case must be distinguished from the flurry of cases brought by other plaintiffs seeking to get free houses based on a "securitization" theory. The law underlying Snyder's claims is clear: only the owner (or holder in due course) of a secured debt holds the right to foreclose on that debt pursuant to a security instrument, and only the owner of a secured debt holds the right to direct a properly appointed agent to foreclose on the debt. Further, under well-

3

established Utah statutory law, a non-judicial foreclosure may only be conducted by a properly appointed trustee who meets specific statutory requirements. These requirements are in place to ensure that, prior to conducting a foreclosure sale, the homeowner's interests have been adequately protected. As alleged by Snyder, the Defendants have failed to take the necessary precautions. Rather, they have marched to a non-judicial foreclosure sale without the proper authority to do so and in violation of Utah Law.

The point cannot be made strongly enough. Just recently, a coalition of attorneys general described a litany of offenses by mortgage bankers, lenders, and servicers. "The moves by states show attorneys general are aggressively targeting the mortgage servicing industry . . . ." McLaughlin, David, Fisk, Margaret Cronin, and Kopecki, Dawn, *BofA Targeted as Attorneys General Step Up Pressure in Foreclosure Probe*, May 25, 2011, *available at* http://www.bloomberg.com/news/2011-05-26/bofa-targeted-as-states-step-up-pressure-in-foreclosure-probe.html (*last accessed* June 20, 2011). "New York Attorney General Eric Schneiderman is investigating banks' mortgage securitizations, and California Attorney General Kamala Harris announced Monday that she has established a mortgage fraud task force." *Id.* "It's clear that servicers have done a lot of bad things and they haven't been called to account for it yet. . . . A state attorney general who really wants to do some digging can find a lot of bad actions by servicers *and the question has always been who is going to do the digging* and who's going to find what facts are there." (*Id.*) (emphasis added).

**ARGUMENT**

The Tenth Circuit recognizes that granting a motion to dismiss is a "harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986) (citing Wright & Miller, Federal Practice and Procedure: Civil § 1357 (1969)) (concluding that the Federal Rules of Civil Procedure have erected a powerful presumption against rejecting pleadings for failure to state a claim). The recent Supreme Court decisions in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), have not changed this fundamental pleading principle.

In interpreting and applying *Twombly*, the Tenth Circuit recently said, "it [*Twombly*] reiterates the bedrock principle that a judge ruling on a motion to dismiss must accept all allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven. '[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

Thus, to succeed on their motion, Defendants must establish that, assuming *all* of the facts pleaded in the Complaint are true, Snyder is not entitled to any of the relief he seeks. *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008) ("'We must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff.'") (Reversing trial court's grant of defendant's motion to dismiss) (Quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

I. **DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE THERE IS A FACTUAL DISPUTE REGARDING DEFENDANTS' AUTHORITY TO ENFORCE THE NOTE.**

Utah Code Ann. § 57-1-35 states "The transfer of any debt secured by a trust deed shall operate as a transfer of the security therefor." Thus, when a promissory note gets sold or assigned, the purchaser or assignee takes the beneficial interest absent an agreement to the contrary. The reason that the Defendants in this case lack the authority to enforce the Trust Deed is precisely because the security *was not* "split" from Snyder's Note when the Note was sold and/or assigned. In his Complaint, Snyder has alleged that his Note was securitized. (FAC ¶¶ 23-25, 37-43). BofA, the original defined "Lender" on the Note and Trust Deed, sold and/or securitized the Note immediately upon funding. *(Id.)* The subsequent Note holder received the security, including the right to enforce the Note via the security instrument, therefore divesting BofA, and the other Defendants of that right. To be clear, Snyder is not challenging the legality of securitization or BofA's right to securitize the Note. Nor does Snyder argue that securitization affects his obligation to pay. BofA and the other Defendants, however, must deal with the legal consequences resulting from the sale, assignment, or transfer of the Note, including securitization. The fact is that, absent an agreement to the contrary, the Defendants in this case do not have the right to enforce the Note via the Trust Deed. Even the FDIC has publicly reprimanded mortgage bankers and servicers for their actions with respect to improper foreclosures.[2]

---

[2] On April 13, 2011, the Federal Deposit Insurance Corporation ("FDIC") issued a "Statement on Enforcement Orders Against Large Servicers Related to Foreclosure Practices." (Statement *available at* http://www.fdic.gov/news/news/press/2011/pr11069.html ) In that Statement, the FDIC stated:

> The findings of the interagency review clearly show that the largest mortgage servicers had significant deficiencies in numerous aspects of their foreclosure processing. These

Although securitization itself is legal, the mortgage bankers who chose to engage in securitization must deal with its results, both good and bad; securitization did not void Snyder's obligations under the Note, but by selling or assigning the Note, as discussed above, BofA divested itself (and the other named Defendants) of its authority to enforce the Note (absent a subsequent agreement to the contrary). When BofA sold the Note, the security for the Note – the Trust Deed – changed hands. Utah Code Ann. § 57-1-35. Despite BofA's claims to the contrary, this is a factual issue that cannot be resolved on a motion to dismiss.

A recent decision from Oregon dealt with a similar situation where the forecloser's authority was called into question and, in that case, the Court denied the lenders'/servicers' motion to dismiss and *granted the homeowners request for declaratory judgment.* In so doing, the court succinctly articulated the problems created when entities such as the Defendants here, transact business behind closed doors, without recording assignments, and subsequently attempt to foreclose without providing requisite information to the borrower:

> deficiencies included the filing of inaccurate affidavits and other documentation in foreclosure proceedings (so-called "robo-signing"), inadequate oversight of attorneys and other third parties involved in the foreclosure process, inadequate staffing and training of employees, and the failure to effectively coordinate the loan modification and foreclosure process to ensure effective communications to borrowers seeking to avoid foreclosures.
>
> \*\*\*
>
> While today's orders put these large servicers on a path to improving their management of the foreclosure process, they do not purport to fully identify and remedy past errors in mortgage-servicing operations of large institutions. Much work remains to ensure that the servicing process functions effectively, efficiently, and fairly going forward. Importantly, these enforcement orders do not contain monetary remedial measures. There is evidence that some level of wrongful foreclosures has occurred. *It is important that servicers identify any harmed homeowners and provide appropriate remedies. This is essential to managing litigation and reputation risk, as well as fairness to borrowers.*

*Id.* (emphasis added).

> Foreclosure by advertisement and sale, which is designed to take place outside of any judicial review, necessarily relies on the foreclosing party to accurately review and assess its own authority to foreclose. Considering that the non-judicial foreclosure of one's home is a particularly harsh event, and given the numerous problems I see in nearly every non-judicial foreclosure case I preside over, a procedure relying on a bank or trustee to self-assess its own authority to foreclose is deeply troubling to me.

*Hooker v. Northwest Trustee Services, Inc.*, Civ. No. 10-3111-PA, 2011 WL 2119103, *7 (D. Or. May 25, 2011) (emphasis added).

## II. DEFENDANTS' MOTION SHOULD BE DENIED BECAUSE SNYDER HAS STATED A CLAIM FOR DECLARATORY RELIEF.

Defendants claim that Snyder is not entitled to declaratory judgment (Def.'s Memo at 6), however, federal law clearly vests the Court with the authority to provide declarations as to the rights of parties in situations such as this. 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). As mentioned above, the United States Supreme Court has held that declaratory relief is appropriate where it provides "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 126 (2007) (holding declaratory judgment was appropriate).

The undisputed allegations and evidence establish not only that factual issues regarding the Defendants authority exist but that they are actually acting in violation of Utah Law. Likewise, numerous factual issues, which must be construed in Plaintiff's favor for purposes of this motion, exist regarding Defendants authority to assign the Trust Deeds and its related

beneficial interest.  Thus, the Court should allow Snyder's claim for decalartory relief against the Defendants to proceed.

### III. DEFENDANTS' RECONTRUST AND WELLS ARE PROPERLY NAMED PARTIES.

ReconTrust and Wells are necessary parties to the declaratory action claim.  As established in Defendants' Request for Judicial Notice ("Def.'s RJN"), BofA allegedly granted, assigned, and transferred its beneficial interest under Snyder's Deed of Trust to Wells on August 27, 2010. (*see* Def.'s RJN Exhibit 2).  That same day, Wells allegedly substituted ReconTrust as the successor trustee under Snyder's Trust Deed. (*see* Def.'s RJN Exhibit 3).  Also on August 27, 2011, ReconTrust executed a Notice of Default and Election to Sell on Snyder's Property. (*see* Def.'s RJN Exhibit 4).  As established by Defendants own documents, ReconTrust and Wells are necessary parties in that they both have assumed authority to exercise the rights and remedies under Synder's Trust Deed.  In other words, both ReconTrust and Wells are links in a chain that must be connected before Defendants can establish their right to initiate and conduct a non-judicial foreclosure sale on Snyder's Property.  Setting aside the fact that Snyder has both alleged *and established* that Defendants are acting in violation of Utah law, Snyder's allegations are clearly directed at whether the Defendants have the *authority* to enforce the Note via the Trust Deed, not whether the defendants can "produce the actual note . . . ."  (*Id.* quoting *McGinnis v. GMAC Mortgage Corp.*, No. 2:10-cv-301, 2010 U.S. Dist. LEXIS 90286, at *7 (D. Utah Aug. 27, 2010).  For example, Plaintiff specifically alleges "Defendants, however, failed to provide Plaintiff with any evidence of their authority to foreclose . . . ."  (FAC ¶ 122; *see also id.* ¶¶ 2, 26-27, 116-118, 123.)

Snyder has alleged an existing, justiciable controversy between the parties, namely, Defendants' right to initiate and conduct non-judicial foreclosures on the Subject Property. It is ReconTrust's and Wells' *own claimed authority and involvement* in the foreclosure that make them necessary parties to this action.

### IV. DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED BECAUSE SNYDER HAS STATED A CLAIM FOR QUIET TITLE.

In Utah, "[t]o succeed in an action to quiet title to real estate, a plaintiff must prevail on the strength of his own claim to title and not on the weakness of a defendant's title or even its total lack of title." *Collard v. Nagle Constr.*, 2002 UT App 306, ¶ 18, 57 P.3d 603 (quoting *Church v. Meadow Springs Ranch Corp.*, 659 P.2d 1045, 1048-49 (Utah 1983)). Snyder has adequately pleaded a quiet title claim, and contrary to Defendents' assertions, it is not based on "securitization" and "splitting the note" theories.

Snyder's quiet title action is based on the theory that he can establish a greater strength to title than the Defendants, because, whatever right to title they "may" have resulted from an improper or illegal assignment. Indeed, as alleged, BofA immediately sold off any interest it had in the Note and Trust Deed upon funding of the loan. (Compl. ¶¶ 2, 23-25, 74-80). Accordingly, the evidence will show, as alleged by Snyder, that based on his payments under the loans and the equitable interest he has obtained in the Subject Property, his strength of title is greater than that of Defendants. (*See generally* FAC ¶¶ 18-22, 25-27, 75-76, 80, 102, 139-143.)

Moreover, Snyder remains a real party in interest to the Note and Trust Deed whereas Defendants, as alleged, do not. Yet the Defendants are attempting to cloud title on Snyder's Property through an unauthorized non-judicial foreclosure sale. As a party in interest to the Notes and Trust Deeds, Snyder has a greater claim to title in the Subject Property than that of the

Defendants who, as described above, have no interest.[3]  Accordingly, under Utah law, Snyder is entitled to have the Subject Property quieted in his favor and against the Defendants.

## CONCLUSION

Concurring with the majority in *Ibanez*, Justice Cordy, joined by Justice Botsford, felt compelled to add that "what is surprising about these cases is . . . the utter carelessness with which the plaintiff banks documented the titles to their assets.  There is no dispute that the mortgagors of the properties in question had defaulted on their obligations . . . .  Before commencing an action, however, the holder of an assigned mortgage needs to take care to ensure that his legal paperwork is in order." *Ibanez*, 941 N.E.2d at 55 (Cordy, J., concurring).

"Considering that the non-judicial foreclosure of one's home is a particularly harsh event, and given the numerous problems see[n] in nearly every non-judicial foreclosure case I preside over, a procedure relying on a bank or trustee to self-assess its own authority to foreclose is deeply troubling  . . . ." *Hooker*, Civ. No. 10-3111-PA, 2011 WL 2119103, *7 (D. Or. May 25, 2011) (granting declaratory relief in favor of the homeowner).

In an even more recent case, the New York Supreme Court, Appellate Division, concluded:

---

[3] This precise issue was not addressed in *Marty v. Mortgage Electronic Registration Systems,* No. 1:10-CV-00033-CW, 2010 WL 4117196 (D. Utah Oct. 19, 2010), where the plaintiff argued that he was entitled to have his title quieted against all potential creditors based on the plaintiff's "split the note" and "securitization discharged my note" theories.  The court held those theories failed as a matter of law and therefore the defendants had superior title in the property at issue.  In other words, the court concluded that the plaintiff could not discharge his debt against the Note Holder, whoever it might be.  Here, there is a distinction.  Snyder is specifically challenging the authority of the named Defendants with respect to the Subject Property and how they obtained it.  Certainly if Defendants never obtained any rights or authority under the Note or Trust Deed, they would have *no* claim to the Subject Property. Snyder is not trying to quiet title against the actual Note Holders.  Indeed, Snyder's major purpose of this lawsuit is to determine who the Note Holders are so that he can attempt to negotiate with them.

> "This Court is mindful of the impact that this decision may have on the mortgage industry in New York, and perhaps the nation.  Nonetheless, the law must not yield to expediency and the convenience of lending institutions.  Proper procedures must be followed to ensure the reliability of the chain of ownership, to secure the dependable transfer of property, and to assure the enforcement of the rules that govern real property."

*Bank of New York v. Silverberg,* ---N.Y.S.2d---, 2011 WL 2279723 at *6.

Snyder has met his burden under Rule 8 of the Federal Rules of Civil Procedure by pleading facts sufficient to state claims entitling him to relief.  The Court is "obliged to construe the complaint in a light most favorable to the [Plaintiff] and to indulge all reasonable inferences in [his] favor."  *Tuttle v. Olds*, 2007 UT App 10, ¶ 14, 155 P.3d 893.  Snyder has alleged facts that, if proven, plausibly establish the claims asserted and the relief sought.  Since Snyder's well-pleaded facts are assumed to be true, BofA's, BAC's, MERS', ReconTrust's, and Wells' motion to dismiss should be denied.

DATED:  June 24, 2011.                          CORVUS LAW GROUP, LLC

                                                /S/ Tyson B. Snow
                                                Ryan R. West
                                                Tyson B. Snow

                                                *Attorneys for the Plaintiff*

12

## CERTIFICATE OF SERVICE

      I hereby certify that on June 24, 2011, I served the foregoing **MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS** on the following via a Notice of Electronic Filing ("NEF") from the Court's CM/ECF system:

Ronald Russell
Mathew Ball
PARR BROWN GEE & LOVELESS, P.C.
185 South State Street, Suite 800
Salt Lake City, Utah 84111

Michael Wall
AKERMAN SENTERFITT LLP
511 Sixteenth Street, Suite 420
Denver, Colorado 80202

*Attorneys for Defendants Bank of America, N.A., BAC Home Loans Servicing LP, Mortgage Electronic Registration Systems, Inc., ReconTrust Company, N.A., and Wells Fargo Bank, N.A.*

Stephen Tingey
Matthew Cannon
RAY QUINNEY & NEBEKER P.C.
36 South State Street, #1400
Salt Lake City, Utah 84111

*Attorneys for Defendants Chase Home Finance, LLC and Washington Mutual Bank, F.A.*

                /S/ Tyson B. Snow